# Richmond.

## HILDRED FAULKNER v. TOWN OF SOUTH BOSTON.

### March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. SALES—*Definition.*—A sale is a contract founded on a valuable consideration by which the absolute or general property in the subject of the sale is transferred from the seller to the buyer.

2. SALES—*Time when Title Passes—General Rule.*—The time of the passing of the property may be fixed by the terms of the contract, but where it is not it will be determined, generally speaking, by the intention of the parties, as gathered from the facts and circumstances disclosed by the evidence. Where there is no manifestation of intention, resort may be had to the presumptions of law arising out of the facts in the case.

3. SALES—*Time when Title Passes—General Rule.*—If the specific thing is agreed on, and is ready for immediate delivery, the presumption of law, where there is no manifestation of intention, is that the contract is an actual sale; but, where the goods have not been specified, the contract is only executory.

4. INTOXICATING LIQUORS—*Sales—When Sale Consummated—Jurisdiction—Case at Bar.*—The jurisdiction of the mayor of a town in criminal cases extended one mile beyond the corporate limits but no further. Accused, at a point more than one mile from the corporate limits of the town, agreed to deliver to another three gallons of corn whiskey, and then and there received the agreed price of the whiskey. Later, on the same day, at another point, previously designated, less than one mile from the corporate limits of the town, an agent of accused delivered to the purchaser three gallons of whiskey. Whether the whiskey was manufactured after the money was paid, was taken from a larger quantity already manufactured, or was afterwards purchased by accused, did not appear.

   *Held:* That as there was no specific identification of the whiskey, the contract was necessarily executory until the whiskey was appropriated to the contract, and therefore the mayor of the town had jurisdiction of a prosecution of accused for a sale contrary to the town ordinance.

5. INTOXICATING LIQUORS—*Ordinances—Second Offense.*—The prohibition ordinance of a town provided that any one who should violate any of the provisions of the ordinance should be fined and confined in jail, and further provided that "the penalty for any subsequent offense committed after the first conviction" should be a fine, etc. The ordinance repealed all ordinances in conflict therewith.

*Held:* That a "subsequent offense committed after the 'first conviction'" means a subsequent offense against this ordinance, and that a conviction for violating a prior prohibition ordinance was not sufficient.

6. INTOXICATING LIQUORS—*Ordinances—Reasonable Doubt as to Meaning—Second Offense.*—Section one, of a town prohibition ordinance, by its terms, gave the words "second" or "subsequent" offense the same meaning as is given them by the prohibition act of 1922. But it does not follow from this that an offense against the ordinance where there had been a prior conviction under an earlier ordinance was a second offense against the ordinance of the town. There is a reasonable doubt that the language includes such ordinances, and the statute cannot be extended by construction so as to include them.

7. STATUTES—*Construction—Intention of Legislature.*—Courts cannot read into a statute something that is not within the manifest intention of the legislature, as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate, and not to interpret.

8. STATUTES—*Construction—Penal Statutes.*—A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter though within the reason and policy of the law. To constitute the offense the act must be both within the letter and spirit of the statute defining it.

Error to a judgment of the Circuit Court of Halifax county.

*Reversed.*

The opinion states the case.

*William Leigh, Jr.,* for the plaintiff in error.

*Frank L. McKinney,* for the defendant in error.

WEST, J., delivered the opinion of the court.

On an appeal from a judgment of the mayor of the town of South Boston, Virginia, sentencing Hildred Faulkner to jail for twelve months and to pay a fine of $500.00 for a second violation of the prohibition ordinance of the town of South Boston, a jury in the Circuit Court of Halifax county found him guilty and fixed his punishment at confinement in jail for twelve months and a fine of $500.00. This writ of error is to the judgment entered upon that verdict.

The undisputed facts are these:

The jurisdiction of the mayor of the town of South Boston, Virginia, in criminal cases, extends one mile beyond the corporate limits of the town, but no further. On September 12, 1923, Hildred Faulkner, at a point more than one mile from the corporate limits of the town, agreed to deliver to one H. E. Sapphire, by one Archie Banks, three gallons of corn whiskey, and then and there received from Sapphire the sum of $30.00, the agreed price of the whiskey. Later, on the same day at another point in Halifax county, previously designated by Faulkner to Sapphire, less than a mile from the corporate limits of the town, Archie Banks, agent of Faulkner, delivered to Sapphire the three gallons of whiskey.

Hildred Faulkner had been previously convicted by the mayor of the town of South Boston of transporting ardent spirits, on April 5, 1919, in violation of the then prohibition ordinance of the town, and fined $100.00. His reputation as a violator of the prohibition law was notoriously bad. The prohibition ordinance of the town of South Boston in force September 12, 1923, consisted of a caption and forty-two sections, numbered consecutively from one to forty-two, and the same is made a part of the record in the case.

The accused contends that the verdict and judgment

should be reversed and set aside because, (1) the town of South Boston did not have jurisdiction over the offense which the evidence shows was committed, and (2) the offense proven to have been committed was not a second offense against the prohibition ordinance of the town of South Boston.

The charge in the warrant is that the accused did "unlawfully sell ardent spirits within the police jurisdiction of the town of South Boston, Virginia, to one H. E. Sapphire, this being a second offense, as he was convicted of violating the prohibition ordinances of the said town on the 5th day of April, 1919, and fined $100.00."

The first assignment of error raises the question whether the sale of the whiskey was consummated before it was delivered to Sapphire within one mile of the corporate limits of the town.

[1] A sale is a contract founded on a valuable consideration by which the absolute or general property in the subject of the sale is transferred from the seller to the buyer.

[2, 3] The time of the passing of the property may be fixed by the terms of the contract, but where it is not it will be determined, generally speaking, by the intentions of the parties, as gathered from the facts and circumstances disclosed by the evidence. Where there is no manifestation of intention, resort may be had to the presumptions of law arising out of the facts in the case. If the specific thing is agreed on, and is ready for immediate delivery, the presumption of law, where there is no manifestation of intention, is that the contract is an actual sale; but where the goods have not been specified, the contract is only executory. 1 Benjamin on Sales, section 311, page 324.

[4] In the instant case, no specific whiskey was sold.

The contract was for three gallons of corn whiskey. Whether the whiskey was manufactured after the money was paid, was taken from a larger quantity already manufactured, or was afterwards purchased by Faulkner from some third party, does not appear.

Under these circumstances, there being no specific identification of the whiskey, the contract was necessarily executory until the whiskey was appropriated to the contract. There could be no appropriation of the whiskey to the contract until there was a selection of it by the seller and the adoption of this act by the purchaser, which could not occur until the delivery of the whiskey to Sapphire.

In *George Lochnar* v. *State of Maryland*, 111 Md. 660, 76 A, 586, 19 Ann. Cas. 579, the court held that where the seller of intoxicating liquors delivers them in person or by his agent to the purchaser, without the intervention of a carrier, the place of delivery is the place of sale, and that it made no difference that the agreement to sell was made elsewhere. Citing *State* v. *Houts*, 30 Mo. App. 265, and *Commonwealth* v. *Greenfield*, 121 Mass. 40.

In *Commonwealth* v. *Bottom*, 140 Ky. 212, 130 S. W. 1091, the Court of Appeals of Kentucky held that where whiskey is ordered from another town, and directed to be delivered to a carrier for shipment to the buyer, title passes on delivery to the carrier; but, where the seller's agent conveys it in person, the sale is made on delivery to the buyer.

It follows that there was no sale of the whiskey until its delivery to the purchaser within the jurisdiction of the mayor of the town of South Boston, and that the first assignment of error is without merit.

[5] The second and remaining assignment of error alleges that the prosecution failed to prove a second offense against the prohibition ordinance of the town of South Boston.

On June 17, 1922, the council of the town of South Boston passed the "prohibition ordinance" of the town of South Boston mentioned in the statement of facts, to be effective on and after June 18, 1922, and repealing all ordinances or parts of ordinances in conflict therewith.

The only parts of this ordinance material here are sections 41 and 42, as follows:

Section 41. "Any person who shall violate any of the provisions of this ordinance shall, except as otherwise herein provided, be guilty of a misdemeanor and be fined not less than fifty dollars nor more than five hundred dollars, and be confined in jail not less than one nor more than six months. The penalty for any subsequent offense committed after the first conviction, which is not declared to be a felony by the State prohibition act, shall be a fine of not less than one hundred dollars nor more than five thousand dollars, and imprisonment in jail for not less than six months nor more than one year. Unless otherwise herein provided, in all cases where the violation of the State prohibition act is declared to be a felony and a similar offense is declared unlawful by this ordinance, such violation of this ordinance shall be a misdemeanor and the offender shall, upon conviction, be fined not exceeding five hundred dollars and confined in jail not less than six months nor more than twelve months."

Section 42. "This ordinance shall be in effect on and after June 18, 1922. All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed."

The language of section 41, *supra*, is clear: "Any person who shall violate any of the provisions of this ordinance shall   *   *   be fined not less than $50.00 and be confined in jail   *   *." "The penalty for any

*subsequent offense committed after the first conviction*
\* \* \* shall be a fine of not less than $100.00 \* \*."
(Italics ours.)

The language used, in our view, can have but one
meaning. Where a person violates the provisions of
the ordinance for the first time, and is convicted, his
conviction is unquestionably a "first conviction," within
the meaning of the ordinance. And it must follow that
a "subsequent offense committed *after* the 'first convic-
tion' " means a subsequent offense against this ordi-
nance. Had the council of the town of South Boston
intended that "first conviction" should be construed to
mean a conviction under other prohibition ordinances
of the town, or the prohibition laws of the State, passed
prior to the date of the passage of the ordinance under
consideration, it would doubtless have so ordained.

The legislature of Virginia, 1922, in order to make
certain that a conviction under a prior prohibition law
could be proven to convict the accused of a second of-
fense, at the conclusion of section 5 of the prohibition
act of 1922 (Laws 1922, chapter 345) deemed it neces-
sary to use these words: "The term 'second' or 'sub-
sequent' offense, as used in this act, are intended to
mean second or subsequent offenses committed against
this act or other prohibition laws of this State since
November first, nineteen hundred and sixteen."

[6] Section 1 of the ordinance of June 17, 1922, by its
terms, gives the word "second" or "subsequent" of-
fense the same meaning as is given it by the prohibition
act of 1922, *supra*. But it does not follow, as con-
tended, that the offense in question was a second of-
fense against the prohibition ordinance of the town of
South Boston. Under the most favorable view of the
prosecution, there is a reasonable doubt that the lan-
guage includes such ordinances, and the statute cannot
be extended by construction so as to include them.

[7] Courts "cannot read into a statute something that is not within the manifest intention of the legislature, as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret." 25 R. C. L. 963, section 218, citing many cases.

[8] In the case of *McKay* v. *Commonwealth*, 137 Va. 830, 120 S. E. 139, the court said: "A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter though within the reason and policy of the law. To constitute the offense the act must be both within the letter and spirit of the statute defining it. Those who contend that a penalty is imposed must show that the words of the act distinctly cover the case. No conviction can be had if the words are merely equally capable of a construction that would, and one that would not, inflict the penalty. If a penal statute be so ambiguous as to leave reasonable doubt of its meaning, it is the duty of the court to refuse to impose the penalty. Sutherland on Statutory Construction, 350, 352-353." *Enoch* v. *Commonwealth, ante* page 411, 126 S. E. 222.

. There being no proof of a subsequent offense committed after the first conviction, within the meaning of the ordinance of June 17, 1922, there can be no conviction of a second offense in this case.

The verdict and judgment will be set aside and the case remanded for a new trial in conformity with the views herein expressed.

*Reversed.*