## Calhoun v. Commonwealth.

(Decided May 27, 1913.)

### Appeal from Washington Circuit Court

1. Intoxicating Liquors—Construction of Act of 1912—Not Unlawful to. Purchase or Procure at Place Where Liquor May Be Sold.—The act of 1912 making it unlawful to purchase or procure intoxicating liquors as the agent of the seller or buyer, refers to the purchase or procurement of it in prohibited territory.

2. Intoxicating Liquors—Purchase or Procurement by Agent of Buyer.—A citizen living in local option territory may send by his agent to a place where liquor is legally sold and get it for his personal use if the agent acts without compensation and has no interest in the liquor.

3. Intoxicating Liquors—Unlawful to Purchase or Procure Through Agent in Local Option Teritory.—Under the act of 1912, it is unlawful for any person to purchase or procure for another as the agent of the seller or buyer intoxicating liquors in territory where the sale of such liquors has been prohibited.

JOSEPH POLIN, JOHN A. POLIN for appellant.

C. S. HILL, JAMES GARNETT, Attorney General for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant, Calhoun, was indicted in the Washington Circuit Court for an alleged violation of section one of an act of the Legislature passed in 1912. The section reads as follows:

"That it shall be unlawful for any person, firm, or corporation to purchase or procure for another spirituous, vinous, malt or other intoxicating liquors, mixtures or decoctions either as the agent of the buyer or the agent of the seller of said liquors, mixtures or decoctions, either for or without compensation in any county, district, precinct, town or city where the sale of

intoxicating liquors has been prohibited or may be prohibited, whether by special act of the General Assembly or by vote of the people under the local option law of this State.''

When the case came on for trial, an agreed state of facts was made up showing that Calhoun, who lived in Washington County, a county in which the sale of intoxicating liquor is prohibited under the local option law of the State was requested by Janes, also a resident of Washington County, to bring him a quart of whiskey from Bardstown, Nelson County, Kentucky, to which place Calhoun was going. Accompanying the request, Janes gave to Calhoun the money to pay for the liquor, and Calhoun purchased the wiskey for Janes in Bardstown, where the sale of whiskey was authorized by law, and brought it back and delivered it to Janes in Washington County. It was further agreed that Calhoun had no interest in the whiskey and did not receive any compensation from Janes or any one else for purchasing or carrying it, and that he acted merely as a matter of accommodation to Janes. From the judgment finding him guilty of violation of section one of the act, Calhoun prosecutes this appeal.

It will thus be seen that the single question presented by this appeal is, does a person who has no interest in the liquor and who does not receive any compensation for purchasing or carrying it, commit an offense under this act if, at the request of and as the agent of a citizen living in local option territory, he purchases for him at a place in this State where the sale is authorized, intoxicating liquor for his personal use and delivers it to him in local option territory. Counsel for the Commonwealth contend that the agreed facts show a violation of the act of 1912 by Calhoun. While counsel for Calhoun insist that this act only makes it an offense for the servant or agent, under circumstances such as are described in the agreed facts, to purchase or procure the liquor in local option territory or at a place where the sale of liquor is prohibited by law.

At the outset the suggestion is made that if this act attempted to deny a citizen living in local option territory the right to send an agent or servant to a place at which the sale was authorized to purchase and procure liquor for him for his personal use and not for sale or any improper or unlawful purpose, it would be an interference with personal rights of the citizens that it is not within

the competency of the legislative department of the State to regulate or control. The argument in effect, being that as the citizen has the inalienable right to go to a place where liquor is legally sold and purchase it for his own use and bring to his own home for his own use, he may do by his agent or servant what he could do in person. But the question suggested is not before us for decision in this case, as the act under consideration does not, in our opinion, deny this right to the citizen.

The first section of the act is the only one that defines or describes the prohibited acts, and when fairly construed it only forbids the purchase or procurement of liquor in the manner described in the agreed facts in "dry territory." The section makes it unlawful to purchase or procure intoxicating liquors as the agent of either the buyer or seller "in any county, district, precinct, town or city where the sale of intoxicating liquors has been prohibited or may be prohibited." It does not provide expressly or inferentially that it shall be unlawful to purchase or procure the liquor mentioned at places in this State where it may be lawfully purchased and procured. If the legislature had intended to prohibit the purchase or procuring of liquor by or through the personal agent of the purchaser at places where liquor might be lawfully purchased or procured, it appears that there would have been inserted some words indicating this purpose; as for example that it should be unlawful "to purchase or procure it anywhere in the State," or "in places where the sale of liquor was forbidden as well as where it was authorized." But the legislature carefully refrained from inserting any words that might reasonably be construed into a general prohibition and as carefully used words that limited the purchasing or procuring to local option territory.

We may further add that the history of liquor legislation in this State shows that the purpose of the legislature was to do what we have indicated it did do in the enactment of this legislation, because all the statutes on the subject of liquor regulation and control are aimed at the illegal and not the legitimate purchase, procurement, sale or possession of intoxicating liquors. In no one of the many and varied statutes that have been enacted relating to the liquor traffic has the legislature ever manifested a purpose to prohibit the citizen from purchasing or procuring for his personal use intoxicating liquor at places where liquor might be lawfully sold, or to punish

him for having in his possession, for his personal use liquor so purchased. As well said in Martin v. Commonwealth, 153 Ky., 784, where another phase of this act was under consideration: "The statute was aimed at the traffic in intoxicants and not the private use of them. The local option law makes unlawful the sale of intoxicants. It is not intended as a sumptuary regulation to prohibit their private use or to interfere with personal habits. The act does not make unlawful the possession of liquor; it only makes unlawful the possession for the purpose of sale."

Another reason, if one were needed, in support of the construction we have given this act, is furnished by the causes that apparently led to its enactment, and these are well stated in the opinion in Pope v. Commonwealth, 153 Ky., 320, where it was said, in holding that this act prohibited the purchase or procurement of liquor through an agent in local option territory:

"This legislation was evidently enacted to meet cases of the class here presented, and to prevent any one from purchasing or procuring for another intoxicants of any character, at any place in this State where the local option law is in force; and it is no defense to a charge of violation of the provisions of the act that the transaction was one of accommodation purely. Under the old statue, it was a punishable offense to purchase or procure intoxicants for pay in local option territory, but it was held not to be an offense, if the act of purchasing or procuring was simply a matter of accommodation. In the practical working of the statute, it was found to be ineffectual. Instead of preventing intoxicants from being sold in local option territory, it, in many instances, afforded protection to those desiring to violate the law. To remedy this evil, the statute above quoted was enacted.

"It is not an unreasonable exercise of the legislative power, and indeed, counsel for appellant does not so charge. It, in no sense, unreasonably abridges the right of any citizen, but, on the contrary, is calculated to relieve him of what, at times, may be a source of annoyance. It simply removes, as it were, the go-between; the middleman between the boot-legger and his customers."

The further argument is made for the Commonwealth that the last section of this act shows the legislative purpose to have been to prohibit the purchase or procurement of intoxicating liquors at any place in the State. There are only three sections in the act. The first section

we have already quoted. The second section fixes the penalty for a violation of section one, and section three reads:

"The provisions of this act shall not apply to common carriers who in good faith deliver intoxicating liquors, in quantities not to exceed five gallons, at one time, to regular licensed and practicing physicians and druggists in local option territory. Provided, however, that the provisions of this act shall not apply to such liquors prescribed on prescription from regular practicing physicians."

But this section does not in our opinion, throw any light on the proper construction of section one, which, as we have stated, is the only section that undertakes to define or describe the offense created by the act. What the purpose of the legislature was in adding section three is not apparent from a reading of the act. It is not in any respect germane to the subject matter of section one and creates an exception to conditions that are not even remotely provided for in section one. If section one had attempted to prohibit generally the delivery of intoxicating liquor in local option territory, and assuming that it could do so, there would be some reason for exempting common carriers from the operation of section one, and providing that it should not apply to liquor prescribed by a physician, but we do not find in section one any prohibition against the delivery of intoxicating liquor, it only prohibits its purchase or procurement.

The incongruity of section three might be accounted for on the theory that section one of the act as originally introduced contained some words that, in the opinion of the draftsmen of the act, made it proper or desirable to exempt from its operation the class mentioned in section three. But however this may be, and without attempting in any manner to construe section three, which is not before us in this case, it is manifest that section three cannot be resorted to as an aid in the construction of section one. Indeed section one appears to us to be free from ambiguity and only fairly susceptible of the construction we have given it.

Wherefore, the whole court sitting, the judgment is reversed, with direction for a new trial on principles not inconsistent with this opinion.